## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 22 2020, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of E.B. (Minor Child) and D.B. (Father), *Appellant-Respondent,* v. The Indiana Department of Child Services, *Appellee-Petitioner.* | May 22, 2020 Court of Appeals Case No. 19A-JT-2287 Appeal from the Clay Circuit Court The Honorable Joseph D. Trout, Judge Trial Court Cause No. 11C01-1812-JT-343 |

**Bailey, Judge.**

# Case Summary

[1] D.B. ("Father") appeals the trial court's judgment terminating his parental rights to his child, E.B. ("Child"). He raises two issues on appeal, which we consolidate and restate as whether the trial court clearly erred when it terminated his parental rights.

[2] We affirm.

# Facts and Procedural History

[3] Father and A.L. ("Mother")[1] (collectively, "Parents") are the parents of E.B., who was born on October 11, 2015. On September 28, 2016, the Indiana Department of Child Services ("DCS") received a report alleging that Parents were using illegal drugs, that there was domestic violence in their home, and that the home had been recently raided by the police due to child pornography concerns. The allegations regarding Parents' use of illegal drugs was substantiated, but the other allegations were not.

[4] On November 21, 2016, the court approved a program of informal adjustment ("IA") for Parents and subsequently referred Parents to case management services and a substance abuse assessment. Child remained in the home with Mother, but Father was incarcerated from November 11, 2016, to December 5,

---

[1] Mother agreed to a voluntary termination of her parental rights and does not actively participate in this appeal.

2016, and from January 16, 2017, until March 31, 2017. The court in Father's criminal case ordered him to go to Freebirds Solution Center ("Freebirds") for substance abuse treatment, which DCS considered to satisfy the IA.

[5] On March 15, 2017, DCS received a report that the Indiana State Police again were conducting a raid at Parents' home due to reports of child pornography. The police found drug paraphernalia in the home and within reach of Child. DCS created a safety plan with Mother under which she would not allow Child to be in the care of Maternal Grandmother because some of the drug paraphernalia belonged to Maternal Grandmother. However, on March 17, 2017, DCS learned that Mother allowed Maternal Grandmother to watch Child while Mother was working; therefore, DCS removed Child from the home that day and the IA was terminated.

[6] On March 20, DCS filed a petition alleging Child was a child in need of services ("CHINS") because during the IA: Father was arrested twice; Parents continued to test positive for drugs; the Indiana State Police executed a search warrant of the home in which Child was living and found methamphetamine in Maternal Grandmother's bedroom and a "marijuana glass smoking pipe and two (2) small marijuana roaches in the mother and child's bedroom[;]" Mother allowed Child to be cared for by Maternal Grandmother despite knowing the latter was using methamphetamine; and Father was in jail for possession of a controlled substance, theft, and fraud. Ex. Vol. VI at 19. On March 21, detention and initial hearings were conducted as to Mother, and Mother admitted to the allegations in the CHINS petition. On April 4, an initial

hearing was conducted as to Father, who also admitted to the allegations in the CHINS petition. Specifically, Father admitted that, during the IA, he continued to test positive for marijuana, was incarcerated twice due to testing positive for drugs in violation of probation terms, and resided at a sober living facility. He also admitted that services were necessary to address his substance abuse issues. Child was adjudicated to be a CHINS.

[7] On April 18, 2017, the court held a dispositional hearing, and on April 25, the court entered its dispositional decree and parental participation order in which it ordered that Child remain in his placement with relatives and Parents participate in services. The court ordered Father, in pertinent part, to: obtain and maintain suitable, safe, and stable housing; obtain and maintain a legal and stable source of income; obey the law; enroll in programs recommended by the DCS Family Case Manager ("FCM"); complete a substance abuse assessment and successfully complete all treatment recommendations; refrain from the use of drugs; submit to random drug screens; attend all scheduled visitations; and provide Child with a safe and secure environment that can be "provided on a long-term basis to provide Child with permanency." Ex. Vol. VI at 41.

[8] Child has never been returned to the home of either parent. On December 20, 2018, DCS filed a petition to terminate Parents' parental rights. On March 19, May 21,[2] May 29, and May 31, 2019, the court held a termination of parental

---

[2] At the May 21 hearing, Mother agreed to voluntary termination of her parental rights.

rights hearing. The findings of the court were extensive and addressed Father's drug use, substance abuse treatment, mental health, employment, housing, visitation, and general stability.

[9] From these findings, the trial court concluded that there was a reasonable probability that: the conditions that resulted in Child's removal and continued placement outside the home would not be remedied by Father; and continuation of the parent-child relationship posed a threat to Child. The court further concluded that termination of Father's rights is in Child's best interests, and DCS has a satisfactory plan for Child—i.e., adoption. On August 29, the trial court ordered the termination of Father's parental rights. Father appeals from this order.

# Discussion and Decision

## Standard of Review

[10] Father maintains that the trial court's order terminating his parental rights was clearly erroneous. We begin our review of this issue by acknowledging that the traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. *See, e.g.*, *Z.G. v. Marion Cty. Dep't of Child Serv. (In re C.G.)*, 954 N.E.2d 910, 923 (Ind. 2011). However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Although the right to raise one's own

child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[11] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (A) that one (1) of the following is true:
>
> * * *
>
> > (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[12] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to

support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

## Challenge to Trial Court's Factual Findings

*Challenged Findings Regarding Father's Drug Use*

[14] Father challenges trial court findings (B) (8) through (11), (19) through (22), (38), and (139), all of which relate to his drug use throughout the CHINS and termination proceedings. However, the record is replete with evidence of such drug use. That evidence includes DCS exhibits of positive drug screens and notices of probation violations due to drug use. Those exhibits show positive drug screens on various dates for THC, methamphetamine, amphetamine, and K2. The termination hearing testimony of the TOMO technician and the FCM and the Redwood Toxicology Laboratory reports support the findings that Father missed and/or refused to submit to drug screens on multiple occasions. And Father has admitted that he continued to use marijuana even as of the time of the termination hearings. Appellant's Br. at 26 (noting Father's "drug use" is "limited to marijuana").

*Challenged Findings Regarding Substance Abuse Treatment*

[15] Father challenges trial court findings (B) (4), (24) through (26), and (54), all of which relate to his substance abuse assessments and lack of compliance with treatments. However, there is much evidence in the record supporting the findings that Father failed to successfully complete substance abuse treatment as

recommended in assessments. That evidence includes provider testimony and exhibits showing that Father was unsuccessfully discharged from various substance abuse treatment programs and continued to test positive for drug use throughout the CHINS and termination cases.

[16] Father contends that the findings are not supported by the record because the record contains an assessment completed by Hamilton Center in January of 2019 in which the assessor concluded he did not need treatment. However, as the trial court pointed out, that assessment was based upon Father's own self-reporting, and Father frequently had been inconsistent and/or untruthful about his drug use. The court was not required to believe Father's own self-serving and inconsistent statements about his drug use, and the court was permitted to give more weight to evidence that he does need substance abuse treatment but has never successfully completed such treatment. We will not reweigh the evidence or judge witness credibility. *In re D.D.*, 804 N.E.2d at 265.

*Challenged Findings Regarding Father's Mental Health*

[17] Father challenges trial court findings (B) (39), (40), and (54) as they relate to his need for mental health treatment and his failure to obtain it. However, mental health provider testimony and documents support the court's findings that Father has mental health issues for which he needs, but has failed to obtain, treatment. Father contends that the Hamilton Center assessment in January of 2019 shows that he did not need further mental health treatment. But, again, the trial court noted that the assessment was based on Father's self-serving and

inconsistent statements and, therefore, did not outweigh evidence of Father's need for, and failure to obtain, mental health treatment. Again, we will not reweigh the evidence, as Father seems to request.

*Challenged Findings Regarding Father's Employment*

[18] Father challenges findings (B) (72) thru (74), (86), (87), (101), and (138), all of which relate to his employment. Those findings state that Father failed to find *stable* employment as ordered. While the evidence shows that Father was frequently employed during the CHINS and termination proceedings, the evidence also shows that he never kept any of his nine different jobs for very long. Although the evidence shows Father had a job at the time of the termination proceedings, the testimonial and documentary evidence also shows that Father held the job for only six weeks, had been fired from past employers for excessive absenteeism and failing drug screens, was required to submit to random drug screens for his current employer, and was still using marijuana. Thus, the trial court correctly found that there was no evidence Father had *stable* employment.

*Challenged Findings Regarding Father's Housing*

[19] Father challenges findings (B) (35), (89), and (94) through (100), all of which relate to his housing. Those findings state that Father failed to maintain *stable* housing, as ordered, because his housing during the relevant time period was never his own housing; rather, it was always housing dependent upon other people and/or programs. The evidence supports that, since September of 2016,

Father has been either incarcerated, staying at a sober living program, staying at a homeless shelter, or staying at unknown addresses. The evidence also shows, as Father points out, that at the time of the termination hearing, he had been living with his girlfriend ("Girlfriend") for nine months and planned to do so for the indefinite future. However, the trial court found, based on Girlfriend's testimony, that it was uncertain whether she would continue to allow Father to live with her after learning—seemingly for the first time—of Father's continued drug use.

[20] Moreover, there was testimonial and documentary evidence that: Father was on probation; on multiple occasions in the past Father had been incarcerated for violating probation by using drugs; terms of his current probation were that he submit to drug screens and not use drugs; and Father continued to use drugs. That evidence supports a reasonable inference that Father was at risk to be incarcerated once more for violating a term of probation by testing positive for drug use. The evidence supports the trial court's findings that Father did not have stable housing.

*Challenged Findings Regarding Visitation*

[21] Father challenges findings (B) (104), (108), and (109), all of which relate to his visitations with Child. Those findings state that Father did not take actions necessary to ensure that he would have additional and/or unsupervised visitation with Child or that Child would get to know Girlfriend and, therefore, it is unknown whether Father could parent Child unsupervised. However, each

of those findings is supported by FCM testimony.  Father points out that he had a good and loving relationship with Child during visitations.  However, that is merely a request that we reweigh the evidence, which we cannot do.  *In re D.D.*, 804 N.E.2d at 265.

*Challenged Findings Regarding Providing Stability*

[22] Finally, Father challenges findings (B) (113), (114), (117), (118), (126), (133), (140) through (142), (145), and (146)[3] relating to his inability to provide Child with necessary stability.  Those findings relate to Father's consistent illegal drug use, repeated probation violations and incarcerations, untreated substance abuse and mental health issues, and unstable housing and employment, and those findings are supported by both testimony and exhibits in the record as discussed above.  Some of those findings also relate to the stability that Child's foster parents have provided, and can continue to provide, to Child.  And those findings are also supported by testimonial and documentary evidence.  Father points to evidence that he has positive visits with Child and has never used drugs in Child's presence; at the same time, Father admits drug testing shows he still uses marijuana, an illegal substance.  We will not reweigh the evidence.  The findings are supported by the record evidence.

_____

[3] Father also challenges finding 148, but that "finding" actually is a conclusion of law regarding Child's best interests, which we address below.

[23]   The evidence supports the trial court's challenged findings.  Father's contentions boil down to requests that we reweigh the evidence and/or judge witness credibility, which we will not do.  *In re D.D.*, 804 N.E.2d at 265.

# Conditions that Resulted in Child's Removal/Continued Placement Outside the Home

[24]   Father maintains that the trial court erred in finding a reasonable probability that the conditions that resulted in Child's removal and continued placement outside the home will not be remedied.[4]  In support, he points to evidence of his recent partial compliance with some of the court's requirements, such as current employment and housing.  However, again, Father's arguments on appeal are simply requests that we reweigh the evidence, which we cannot do.  *See In re D.D.*, 804 N.E.2d at 265.  Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion.  *Id*.; *Quillen*, 671 N.E.2d at 102.  In doing so, we engage in a two-step analysis.  *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014).  "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied."  *Id*. (quotations and citations omitted).  In the first step, we consider not only the

---

[4]  Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address Father's other challenges under this subsection.

initial reasons for removal, but also the reasons for continued placement outside the home. *T.Q. and A.Q. v. Ind. Dep't of Child Serv.* (*In re N.Q.*), 996 N.E.2d 385, 392 (Ind. Ct. App. 2013). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re E.M.*, 4 N.E.3d at 643. However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted); *see also In re M.S.*, 898 N.E.2d 307, 311 (Ind. Ct. App. 2008) (noting the "trial court need not wait until a child is irreversibly harmed such that his physical, mental, and social development are permanently impaired before terminating the parent-child relationship"). In evaluating the parent's habitual patterns of conduct, the court may disregard efforts made shortly before the termination hearing and weigh the history of the parent's prior conduct more heavily. *R.C. v. Ind. Dep't of Child Serv.* (*In re K.T.K.*), 989 N.E.2d 1225, 1234 (Ind. 2013). And DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Moore*, 894 N.E.2d at 226.

[25] Here, Child was originally removed because Mother continued to have drugs and drug paraphernalia in the home and within Child's reach, Father could not care for Child due to his incarceration for violating probation with positive drug screens, and both parents continued to test positive for illegal substances. The

trial court did not err in concluding that there is a reasonable probability that the neglect would continue if Child was returned to Father's care. As of the date of the termination hearing, Father continued to test positive for marijuana use, and it is reasonable to infer that such continued use is likely to result in Father being incarcerated once again. Father downplays his continued marijuana use, noting that such use is legal in other states. However, marijuana use is not legal in Indiana, and the terms of Father's current probation are that he not use any illegal substances and that he submit to drug screens. Thus, the court reasonably inferred that Father is likely to be re-incarcerated for his illegal drug use, either as a violation of probation or a new crime.

[26] The court also reasonably inferred that Father is likely to lose his current employment because of his continued drug use; his employer randomly tests for drug use, and Father admits he continues to use marijuana. The court also reasonably inferred, based on Girlfriend's testimony, that Father may lose his housing with Girlfriend due to his continued drug use. In addition, there was ample evidence in the record that Father's substance abuse problems and mental health issues have not been successfully treated.

[27] Given Father's habitual patterns of drug use resulting in incarceration and/or loss of employment and housing, along with evidence of his current drug use and precarious employment and housing, the trial court did not clearly err in concluding that Father has not remedied—and is not likely to remedy—the conditions that led to Child's removal and continued placement outside the home.

# Best Interests

[28] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *L.S. v. Ind. Dep't of Child Servs.* (*In re A.D.S.*), 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[29] Again, Father's contentions on this issue amount to requests that we reweigh the evidence, which we will not do. The evidence most favorable to the judgment shows that, throughout the CHINS and TPR proceedings: Father was repeatedly incarcerated due to his continued drug use; Father repeatedly tested positive for illegal drug use and/or refused to take drug screenings; Father did not successfully complete either substance abuse or mental health treatment as ordered by the court; and Father had unstable housing and

employment. Moreover, both the FCM and CASA recommended that Father's parental rights be terminated. Given that testimony, in addition to evidence that Child needs permanency and stability that Father cannot provide and that the reasons for Child's removal from Father will not likely be remedied, we hold that the totality of the evidence supports the trial court's conclusion that termination is in Child's best interests. *In re A.D.S.*, 987 N.E.2d at 1158-59.

# Conclusion

[30] The evidence in the record supports the trial court's findings of fact, and those findings support the trial court's conclusion that Father's parental rights should be terminated. The trial court did not commit clear error by so ruling.

[31] Affirmed.

Crone, J., and Altice, J., concur.